Good morning, Your Honors. My name is Thomas DiCarolo. I represent LaRosa's Intl Fuel and Joseph LaRosa. Interesting that such a, I guess, complex set of legal analysis could come out of a relatively straightforward set of facts. In this situation, the LaRosa's entities were subjected to a Jeopardy assessment. As a result of that Jeopardy assessment... How do you get around Rosenmans? I get around it by the fact that a levy is preceded the escrow account, and a levy reduced cash assets, liquid assets only, to the controls of the Internal Revenue Service. And under the cases that we cited, there's a distinction between a... But we go into an escrow account, right? Later we go into an escrow account by the, after the... From which the LaRosas are able to withdraw $2 million on one occasion to In the Rosenmans case, we're dealing with an advanced payment of estimate taxes which go into some kind of suspense account. And the court makes an interesting statement. The court says they are, this funds in this suspense account, they are, as it were, payments in escrow. So the Supreme Court seems to be saying an escrow account would also be subject to interest until the tax is finally paid, as it happened in Rosenmans. Well, we did come up with the two cases that say that interest in an escrow account is subject to... I'm sorry, deposits in an escrow account are subject to IRS interest. And basically Those were not, those were lower court... Well, the tax court and the, I guess the Second Circuit say that, but at any rate, as far as... When you say subject to IRS interest, what exactly do you mean? I'm using that as shorthand to mean that the IRS would have to be obligated to pay interest on the funds that are subject to the escrow account in certain cases. Well, in fact, you did get the money, didn't you? And the money, to the extent that they got interest on the escrow account, on the liquid portion of the escrow account, that interest would be offset against any other interest that the IRS would be required to pay. Are you seeking overpayment interest or underpayment interest? Well, I would say we're seeking... I would say we're entitled to both because interest is interest in a sense because if you take a look at the situation, okay, there's a jeopardy assessment, then there's a levy. So you're contending that the monies that were the subject of the levy that were placed in in light of the fact that ultimately the settlement that was reached showed a much lower tax liability. That's the argument for overpayment interest. And as far as underpayment interest... Underpayment interest, Your Honor, if you give us... You're saying that now is that... You're contending that that was greater than the actual interest that accrued on the escrow funds and that you should therefore get the difference? Based on my calculations, it was greater, Your Honor. And here's how I would compute it. I would say, okay, there's a jeopardy assessment, the levy. The levy starts the running of interest and then the settlement, in other words, the actual tax that was finally determined relates back to the date of the jeopardy assessment. So the Rosas would owe interest from the period of the jeopardy assessment until the funds were levied. And then they would get credit against the underpayment from the time that the funds were levied until the resolution of the case. And they would also get paid for the overpayment. Now, the escrow account accrues interest, right? The escrow account was invested in interest-bearing... So there is interest flowing into that account? Interest flowing into that account. And at the conclusion of the investigation after the taxable amount has been withdrawn from that, it's returned to the Rosas, right? But actually, the Rosas wrote a check for some reason. I don't know why they wrote a check to the IRS. And then got the whole escrow account back. In that instance, they got the interest in that escrow account. And they must account for that interest in the computation of the interest that the IRS would owe them. Because the amount of interest running during that period, you're looking at double-digit, in some cases, interest accruals. And the interest that was earned in the escrow account was significantly less than that. You're saying, Mr. DeParle, if we were to agree with you and send it back for an accounting, if you will, there would be offset against what the IRS would be deemed to owe the Rosas, the amount that your clients receive. That's correct. Not just the amount they receive, if that's different than the amount that was accrued, but the amount of interest that was earned on that project. One of the times that this case ended when the litigation in the tax court set up. Right. And at that point, as you pointed out, the Rosas made a payment to the IRS principal and interest, correct? And whatever penalties, I believe there were a bunch of penalties in there. And the interest that was paid was interest that the IRS said was due on the unpaid or that is my understanding. Okay. So that is the interest that you're claiming your clients should not have had to pay. We should not have had to pay that interest. That's one component. Right. They didn't pay interest on their debt during the period of the escrow agreement. There were some payments during the escrow agreement which are not part of this case. Right. But I mean, in other words, the interest payment about which your clients are complaining was the payment that was made in the settlement. That is one of the things. And also they're saying that because the settlement was about seven times, almost seven times the final assessment, that they're entitled to interest on the cash portion. This is a complicated accounting. The cash portion of the escrow account that would have been paid as an overpayment. So, in other words, if you look at the, you're going to have an accountant that's going to have to figure out the earnings on the non-cash and the cash portions of the escrow account. And then they're going to have to compare that to the amount of interest that accrued on the tax liability. But they've done paid interest. And then subtract from, and then when you come to that gross determination of the gross amount of interest, you're going to have to subtract that interest that they got on the escrow account. Mr. Kerr, the... According to the Second Circuit, that is. I don't see how there can be any claim here for any overpayment interest. If you look at the appendix page 165, this is the settlement agreement. The bottom of the page says this agreement is entered into solely for the purpose of securing the payment of the taxpayer's tax liability and is not to be considered as payment of such liability. So, in what sense can you contend that the amounts placed in escrow represent an overpayment of tax? Well, in the sense that it is not applied to tax, but it was, even though it was seized by the IRS under a levy, and is therefore, in our view, you know, we discussed, subject to being paid interest by the IRS. It doesn't really matter whether it's applied to tax or not in the ultimate computation. In other words, the underpayment interest is the overpayment interest. Well, the underpayment, I'm sorry. It's not considered by agreement. It's not to be considered as a payment of any liability, tax liability. And it's placed at your client's suggestion in an escrow account in order to both satisfy the government's interest in securing those funds and your client's interest in having some access to it. That, you know, the arrangement is one that your client's requested. It's an arrangement that provided for interest to accrue, and is taxable to your client's income. And the agreement makes it perfectly clear that these funds are not to be considered as payment of any tax liability. It seems to me that leaves you with no wiggle room for an overpayment claim. Well, actually it does, Your Honor, because we have the levy as the payment of the tax liability. Putting the money in the escrow account is not a payment of the tax liability, because, well, I mean, the answer to your question, based on what I've been able to discern from my entry into this case, okay, the levy, in our view, the levy is the payment of the tax liability. Setting up the escrow account is not a payment of the tax liability because if it had been a payment of the tax liability, then the LaRosas would have possibly lost their right to go to tax court. That's, of course, how you get around the statute, is to say the levy is the date on which the tax was paid. But what if they had been found that there was no liability? What if the whole thing, there was no payment to be made? How would the levy then have been a payment of the taxes? Well, actually there was a tax to be paid because there was a jeopardy assessment, so our client was subject to being set aside. And there are certain rights that tax payers have. You can go to district court and try to have your assets rearranged under the jeopardy assessment and so forth. But a jeopardy assessment is an assessment of tax. And so, once the jeopardy assessment occurred, even if it turns out to be zero later on, at the time of the payment, there was an assessment of tax. Would you like to save the remainder? Yes, yes. I just have two questions. First of all, you say the levy was a payment, right? That's, yes. How was that? The government, the IRS didn't get anything for the levy. The money, you read the ESCO agreement, to which Judge Lynn was referring a minute ago, and it shows, it says any monies obtained by the IRS go in here. So, well, the IRS did get, I mean, as soon as there's a levy, according to the cases, the money is reduced to the possession of the IRS. Actually, under a later statute that came in later, I don't remember the exact date of the statute, but there's a 21-day period between the filing of the levy on liquid assets and the time it has to be paid over to the IRS. Okay, that's under the Taxpayer Bill of Rights and so forth. But, I mean, in this particular situation, the assets that are in your levy are reduced. But they didn't have them in the IRS. The IRS didn't have them. Well, they did have them eventually, when they took the assets. They had some to begin with, and then later on they got some more and put them, as the banks gradually processed the paperwork. The other question I want to ask is, one thing you said confused me. I understood, coming into argument today, that what happened was there was an indebtedness, a tax indebtedness. The IRS puts money in the escrow account, and that money produces interest. It's paid to the taxpayers. Then there's the settlement of the tax court litigation. And at that point, the taxpayers pay the interest that the IRS said they owed, but the settlement agreement retains for them the right to challenge that interest payment. And that's the litigation that we see in the Court of Federal Claims, correct? That's the litigation. So, in other words, I understood your claim to be against that interest payment that was made at the time of the settlement, correct? No, that's only part of our claim. What's the rest of the claim? The rest of the claim is the fact that $20 million of assets were levied, and ultimately $4 million of 3.3 point something was ultimately paid. Well, how does that give rise to the claim? You got interest on everything that was in the account, and you got the money back. But we didn't get IRS interest. We only got IRS interest. IRS interest is much higher than the interest on key bills during this period of time. You're saying the interest rate that you were paid by the IRS was not high enough? But on the United States Treasury, on a key bill, it was different than the amount that we claim the LaRosas are entitled to under the statute provided. So just to close out my question, your contention is, number one, we're entitled to get the interest we paid in the settlement. And number two, we're entitled to more money because the IRS didn't compute at a high enough rate the interest you paid to some of the funds in the account. That's right. Okay. Just one quick question, and it's not in the settlement agreement or the page 193 of the appendix. The stipulation was that you reserve the right to pursue an action with respect to interest claimed to be due by the IRS on the deficiencies. That's underpayment interest. Most of the colloquy that has taken place here is with respect to some contention that you're entitled to overpayment interest. But as I read this, the only right you reserved was to pursue an action to recover interest claimed to be due by the IRS on the deficiencies. That's right. And that's because there was a payment being made on the deficiency, but under the law, when the money was seized, the right to interest began to accrue. And so in order to reserve the right for underpayment deficiency, we had to put that, the council had to put that in the settlement agreement. However, the Rosas are also entitled under the law governing payment of interest on payment of interest. Thank you very much. We'll give you two minutes to rebutt that. Thank you. And can you give Ms. DeSole 17 minutes, an extra two if she needs to use them? Thank you, Your Honor. Make the time about equal. You may proceed. May I please have the court? I'd like to start by clearing up what interest is at issue here. That would be helpful. Is it about overpayment interest or underpayment interest or what? The only thing that this court can consider is whether taxpayers are entitled to additional underpayment interest. And if the court of federal claims correctly held that they are not entitled to that underpayment interest. To the extent that taxpayers are arguing that they're entitled to interest on the assets in escrow, the interest that was earned while the assets were held in escrow has already been distributed to taxpayers as the escrow agreement calls for. To the extent that the assets earned money was the money that was earned on the cash assets in escrow that were vested in treasury bills. And they did earn that interest and received that interest. While the assets were in escrow, the government didn't get any benefit of that money, including earning any interest. The case kind of turns on the date paid. The statute very clearly says that the interest runs up until the date the tax is paid. Is the levy a payment of the tax? Your Honor, it's not. I think when you look at the provisions of the code pertaining to the levy, it makes clear that the levy and Supreme Court decisions, such as the Whiting Pool decision and the National Bank of Commerce decision that have addressed levies, those decisions make clear that a levy is a provisional remedy. It's a step in the collection process. And there's a process through which the IRS issues a notice of levy to the taxpayer and the third party holding the levy saying it's going to issue a levy. It issues the levy. And then there's a time period during which the IRS has to actually go in, get that money, and it has constructed what the Supreme Court has called a constructive interest in that money once it's levied. But it doesn't actually have the money. Mr. Carroll disputes that. He says that you had full control over those funds once you had levied on them. I think that's inconsistent with Supreme Court precedent and the Internal Revenue Code. In the Whiting Pool's case, for example, the IRS had levied on money. And then the court held that under the Bankruptcy Code, until the money was actually applied to pay a tax, the IRS could be forced to return that money to the bankruptcy trustee under the Bankruptcy Code, under Section 532, I believe, the Bankruptcy Code. And, for example, Section 6332 of the Internal Revenue Code explains that actually when the IRS issues the levy, then what happens is, for example, when it's to a bank for cash, the bank has 21 days in which to turn over that money. So the code generally, in all the levy provisions, contemplates a period of time where the IRS would levy and then will, at some subsequent time, realize the assets and actually apply it to a specific payment. Is 6332 a key code provision? I think it's one of a series of key code provisions. I think the fact that you have several different code provisions, one, 6331, authorizing a levy, and then 6342 clarifies that… What authorizes the levy? 6331. 6332 spells out when it's a levy for cash. The entity holding the levy has a period of time before it has to turn over the money to the IRS or to the bank. So the IRS, 21 days later, may not even have the money yet. And then 6342 clarifies that the money realized from the levy, contemplating something other than the levy itself, will occur at some subsequent time, and then the proceeds from the levy have to actually be applied to pay the tax. And those series of sections, together with Supreme Court precedent, make very clear that a levy is not equivalent to a payment of tax. And Rosenman makes clear that even though the IRS may have some possessory interest in that money after the levy occurs and some control over it, it's not enough to make it a payment. And until that payment occurs, unpaid interest continues to accrue. Because there could be a situation where somehow a third party was found with the money or whatever, and there could be various different situations where the IRS might decide to release the levy. There's a provision for release of the levy. For whatever reason, the IRS might never realize those funds. And here, the IRS never actually realized funds and got the benefit of them so that the government could use it for government purposes, like fighting a war, building a bridge, whatever the government wanted to spend it on. So you're arguing then that while the levy was executed and the funds were then seized pursuant to the levy that, in accordance with the agreement reached in the escrow agreement, those funds were not applied to any tax assessment. They were instead placed in escrow. That is correct, Your Honor. And under the Rosenman case, that's not the equivalent of a payment, where funds are effectively placed in escrow, which is exactly what we have here. We have the parties spelling out that this is an escrow and not a payment in their agreement. Then no payment of tax occurs, and underpayment continues to accrue. And that makes sense here in terms of the relevant rights for parties, because taxpayers here got the benefit that was earned on the levy funds. They got a chance to have their funds not be immediately liquidated to pay their tax, but rather to have the value preserved, which was according to the escrow agreement and the stipulation here was preserved for them. And they got the ability to access those funds for their personal and business expenses up to about $2 million over the course of the escrow, whereas the government got no interest on the money that was held in escrow and no benefit from that money except for security. You heard the question I asked Mr. Carlin. I said that my understanding was that his claim was for the interest that the taxpayers paid at the time of the settlement, the tax court litigation, and that the stipulation had given them the rights to claim that interest. Correct? That is correct, Your Honor. That was the interest on the underpayment.  That's correct. And I understood him to be saying in his briefs, we're entitled to have that back. He's saying, I think, yes, that his claim is entitled to have that back. Because the payment had been made. Because the payment had been made, and therefore, as of the day of the levies, the underpayment interest should have ceased to accrue. And so for these five years between the levies and the time that a check was actually issued to pay the tax, there should be no underpayment interest. I understand. And so that's the issue in this case. Now, what about this claim he's making that the – as I understood him to be saying that he also has a claim, and I don't recall seeing this. Maybe I missed it. I think – did you hear him say when he was up at the podium that there's also a claim for interest, additional interest, on the funds that were in the escrow account because the IRS wasn't using the high enough interest rate? Well, Your Honor, I did hear him say that at the podium. I don't think he can assert that claim on appeal. Well, first of all, I don't think it was raised in the refund claims or in the courts below or in his complaint or any of his arguments in court below. Do you see it in the brief? And I think there was some – there was some language in the brief that I thought could possibly have been read that way, but I was not sure that was what he was saying when I was reading the brief. But hearing him say it here, I think that is what he's saying. But it definitely was not raised in the refund claim or in the court below. And I think – So you're saying this claim, whatever allusions there may be to it in the brief before us, was not raised below? I do not believe it was raised below, Your Honor, either in the refund claims or in the complaints or our arguments below. I guess I could also point out that in the tax court litigation, that finally resolved taxpayers' tax liability for these years of issue, including the interest claims. And, in fact, the Court of Federal Claims in one of its decisions below, the government actually made an argument that it should be able to get additional interest, and that was rejected. We haven't appealed that issue because I think it's – we concluded that maybe that is the correct result. Because the tax court stipulation resolves all issues with regard to the taxpayers' tax liability except this one reserved issue where they reserve the right to dispute the amount of underpayment interest due. And that's the only thing that's not raised here in COTA with respect to how much interest was owed here. And so I think that's what we're left with is that the only thing that they could raise is the underpayment interest. There's no – there's also no claim below that they were entitled to additional interest on the escrow funds. They received all the escrow – all the money that was earned by the cash in escrow, and that's all they're entitled to in all that they've claimed below. I'd just like to point out also that this – we're not writing it on plain slate here. This exact same argument was raised in litigation that Judge Flores' brother, Dominic, asserted in the United States District Court for the District of Maryland, the case that we referred to in our briefs before. And that was affirmed by the Fourth Circuit. And he made the exact same claims that – under the exact same escrow argument that he was entitled to recover underpayment interest. And the District Court for the District of Maryland and the Fourth Circuit rejected that argument. And I think there's no reason to reach a different result here and create a circuit split in that regard. In Mr. DeCaro's brief, he makes an argument that somehow this case is different because this case involved cash levies, whereas the La Rosa One opinion involved non-cash assets. But I think there's no factual basis for that distinction because if you look at the escrow agreement, all three of the La Rosa taxpayers, the two brothers and the corporation, all had a variety of assets that included cash bank accounts as well as brokerage accounts, real estate, partnership interest. So I think there's not a factual distinction on that basis. And even if we were just dealing with cash here, the fact remains that the cash was never applied to pay the tax. Instead, the parties entered into this escrow agreement to place the money that was levied upon and all the assets that were levied upon in escrow before they actually got to the point of applying the money to pay the tax. I'd also like to just briefly touch on the suggestion that the cash bond provisions are relevant here. In La Rosa One, the district court for the District of Maryland concluded that this was not a cash bond arrangement, and the government has never contended this is a cash bond arrangement. A cash bond is a specialized circumstance where a taxpayer who wants to litigate a tax report can avoid underpayment expenses accruing by taking certain steps to post a cash bond. And that wasn't what happened here, so this is not a cash bond situation. And to the extent that the taxpayer's brief suggests that it has to be either a payment or a cash bond, it's not. Are there any further questions from the court? Senator, further questions? I have a question. Thank you very much. Carol, you have about two minutes. Thank you, Your Honor. One of your arguments, Mr. DiCaro, is that you somehow got less than the interest rate you wished to receive on the money that was in the escrow account. That's right, Your Honor. But if you look at page 163, you agree to the interest procedure for the escrow account. You agree that those will be invested with the federally insured banker savings alone in certificates of deposit. That's part of your agreement. So you agree to that interest rate. Is that correct? Well, I mean, that's what it says in the escrow agreement. However, that escrow agreement came about as a result of a district court challenge to the Jeopardy assessment. And so both parties agreed to that. You can't say that you didn't agree to it, and so it's a little hard for you to contest at this point that that's not something that you were aware of. Oh, we're not saying we're not aware of it. You were prejudiced by it. We were definitely prejudiced by it because the agreement was preceded by a levy on all these assets. And under Whiting-Pooles, if you take it under Whiting-Pooles and any of the other cases, there is a clear distinction between levying on liquid assets and non-liquid assets. Mr. Caron, where in the record does it show you raising this point below? You mean in Whiting-Pooles? No, the argument – well, the overpayment interest. The overpayment interest. Your Honor, I'm going to say that I'm going to acknowledge – I just rewrote the claim for refund. The claim for refund itself is a claim for underpayment interest. So if it's remanded, we're going to be stuck with what is in the claim. And I may have some arguments below, but I don't think it's relevant for purposes of these proceedings. So what you're saying then – I want to make sure I understand this – you're saying that for purposes of these proceedings, the appeal before us, you are not asserting entitlement to additional interest on the funds in the escrow account. While I am asserting that, I'm acknowledging the fact that the claim says this is a claim for refund of interest paid on the roses underpaid. So this claim that you articulated today was not raised below? No, it wasn't raised below. All right. All right. Thank you. And, I mean, I've got 18 seconds. No, I think that's – you're past the – Oh, I'm sorry.  Thank you very much. Thank you. The next case is –